# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

**Rickey Paul VanDyke, Sr.**

                Plaintiff(s),

vs.

**The Minneapolis Police Department**

                Defendant(s).

Case No. 14cv224 SRN/SER
(To be assigned by Clerk of District Court)

DEMAND FOR JURY TRIAL
    YES [✔]   NO [ ]

(Enter the full name(s) of ALL plaintiffs and defendants in this lawsuit. Please attach additional sheets if necessary.)

## EMPLOYMENT DISCRIMINATION COMPLAINT

### PARTIES

1. List your name, address and telephone number. Do the same for any additional plaintiffs.

   a. Plaintiff

   | | |
   |---|---|
   | Name | Rickey Paul VanDyke, Sr. |
   | Street Address | 4100 27th. Avenue South |
   | County, City | Hennepin County, Minneapolis |
   | State & Zip Code | Minnesota, 55406-3048 |
   | Telephone Number | (612) 729-7705 |

2. List all defendants. You should state the full name of the defendant, even if that defendant is a government agency, an organization, a corporation, or an individual. Include the address

JAN 24 2014
U.S. DISTRICT COURT MPLS

where each defendant may be served. Make sure that the defendant(s) listed below are identical to those contained in the above caption.

   a. Defendant No. 1

      Name             **Minneapolis Police Department**

      Street Address    **350 South 5th. Street**

      County, City      **Hennepin, Minneapolis**

      State & Zip Code  **Minnesota 55405**

   b. Defendant No. 2

      Name

      Street Address

      County, City

      State & Zip Code

**NOTE: IF THERE ARE ADDITIONAL PLAINTIFFS OR DEFENDANTS, PLEASE PROVIDE THEIR NAMES AND ADDRESSES ON A SEPARATE SHEET OF PAPER.
Check here if additional sheets of paper are attached:** ☐
**Please label the attached sheets of paper to correspond to the appropriate numbered paragraph above (e.g., Additional Defendants 2.c., 2.d., etc.)**

JURISDICTION

The Court has jurisdiction over this action under 28 U.S.C. § 1331.

3. This employment discrimination lawsuit is based on (check only those that apply):

   a. ☐ Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, *et. seq.*, for employment discrimination on the basis of race, color, religion, gender, or national origin. **NOTE:** *In order to bring suit in federal district court under Title VII, you must first obtain a right to sue letter from the Equal Employment Opportunity Commission (EEOC).*

   b. ☑ Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. §§ 621, *et. seq.*, for employment discrimination on the basis of age (age 40 or older). **NOTE:** *In*

    order to bring suit in federal district court under the Age Discrimination in Employment Act, you must first file charges with the Equal Employment Opportunity Commission (EEOC).

    c. ☐ Americans with Disabilities Act of 1990, as amended, 42 U.S.C. §§ 12101, *et. seq.*, for employment discrimination on the basis of disability. **NOTE**: *In order to bring suit in federal court under the Americans with Disabilities Act, you must first obtain a right-to-sue letter from the Equal Employment Opportunity Commission (EEOC).*

    d. ☐ Rehabilitation Act of 1973, as amended, 29 U.S.C. §§ 701, *et. seq.*, for employment discrimination on the basis of a disability by an employer which constitutes a program or activity receiving federal financial assistance. **NOTE**: *In order to bring suit in federal district court under the Rehabilitation Act of 1973, you must first file charges with the appropriate Equal Employment Office (EEO) representative or agency.*

    e. ☐ Other (Please describe.)

4. If you are claiming that the discriminatory conduct occurred at a location other than the defendant's address above, please provide the following information on where the conduct occurred:

    (Street Address)    (City/County)    (State)    (Zip Code)

5. When did the discrimination occur? Please give the date or time period:

   **From 2009 through 2012**

ADMINISTRATIVE PROCEDURES

6. Did you file a charge of discrimination against the defendant(s) with the Equal Employment Opportunity Commission or other federal agency?

    a. ☑ Yes    Date filed: **09/25/2013**

    b. ☐ No

7. Have you received a Notice of Right-to-Sue Letter?

3

a. [✔] Yes    If yes, please attach a copy of the letter to this complaint.

b. [ ] No

NATURE OF THE CASE

8. The conduct complained of in this law suit involves (check only those that apply):

   a. [ ] Failure to hire me

   b. [✔] Termination of my employment

   c. [ ] Failure to promote me

   d. [ ] Failure to accommodate my disability

   e. [ ] Terms and conditions of employment differ from those of similar employees

   f. [ ] Retaliation

   g. [ ] Harassment

   h. [✔] Other conduct (please specify):
   **Age Discrimination**

   i. Did you complain about this same conduct in the charge of discrimination, referred to in number 6 above?
   [✔] Yes   [ ] No

9. I believe that I was discriminated against because of my (check all that apply):

   a. [ ] Race

   b. [ ] Religion

   c. [ ] National origin

4

d. ☐ Color

e. ☐ Gender

f. ☐ Disability

g. ☑ Age (my birth year is: **1,950.00** )

h. ☐ Other (please specify):

i. Did you state the same reason(s) in the charge of discrimination, referred to in number 6 above?

☑ Yes    ☐ No

Describe in the space provided below the basic facts of your claim. The description of facts should include a specific explanation of the conduct that you believe is discriminatory and describe how each defendant is involved in the conduct (i.e. how, where, and when). Each paragraph must be numbered separately, beginning with number 10. Please write each allegation of discrimination in a separately numbered paragraph.

10.

**See Attachment**

**Attach additional sheets of paper as necessary.**
**Check here if additional sheets of paper are attached:** [✔]
**Please label the attached sheets of paper as Additional Facts and continue to number the paragraphs consecutively.**

REQUEST FOR RELIEF

State briefly and exactly what you want the Court to do for you and the amount of monetary compensation, if any, you are seeking.

**1. Job Reinstatement**
**2. Compensatory and Punitive Damages**
**3. Legal and Equitable Damages**

Date: **01/22/2014**

_____
Signature of Plaintiff

Mailing Address    **4100 27th. Avenue South**
**Minneapolis Minnesota**
**55406-3048**

Telephone Number   **(612) 729-7705**

Note:   All plaintiffs named in the caption of the complaint must date and sign the complaint and provide his/her mailing address and telephone number. Attach additional sheets of paper as necessary.

## ALLEGATIONS ON DISCRIMINATION

### Paragraph Number 10
### The Introduction

Officer Rickey Paul VanDyke, Sr. alleges in his complaint that he was a victim of a calculated campaign by members of the Minneapolis Police Department that would result with him no longer being employed by the Minneapolis Police Department.

Because of Officer VanDyke's age, this goal could only be achieved by one of three methods, the first being voluntary retirement; the second, in-voluntary retirement in lieu of termination, and the third being termination.

But there are techniques that can be implemented by The Police Administration that could help insure that the wanted results were achieved, even against senior officers. One being the changing of their work assignments to what could be considered a less desirable one. The second technique is being overly critical of the employee(s) work and how the employee(s) conducts themselves at work. The third is to allow all concerns and complaints about the officer(s) to be submitted to an Internal Affairs Unit for review. From this maneuver Progressive Discipline could be established.

The use of these techniques will bring the officer(s) to the attention of their shift commander and to the attention of other units, *ie*, the Internal Affairs Unit (IAU) for perceived negative behavior, which then instills bias and a hyper vigilance against the officer(s).

Officer VanDyke will illustrate in his claim how all of these techniques were used against him Resulting in his termination on November 30, 2012 from the Minneapolis Police Department after over 29 years of service

### Paragraph Number 11
### Employment History

Officer VanDyke was considered one of the senior most police officers in the Minneapolis Police Department. He had been a police officer in Minneapolis for 29 years and 10 months. His entire career as a police officer spanned over 37 years.

2

During Officer VanDyke's over 29 year career in Minneapolis he had received multiple awards and letters of appreciation. Officer VanDyke was the first recipient of the Distinguished Service Award in the Minneapolis Police Department's history.

### Paragraph Number 12
### Officer VanDyke's Plans For His Retirement

Officer VanDyke had planned to work until he turned 65. This decision was based on events that occurred in 1998. Officer VanDyke was charged with two gross misdemeanors. After he was charged Officer VanDyke was terminated before the legal issue has been to resolved.

Officer VanDyke was acquitted and ultimately reinstated, but he was only awarded his back pay even though he had to utilize his pension for income.

### Paragraph Number 13
### When Mr. VanDyke Noticed A Dramatic
### Change In The Work Environment

In 2004 Officer VanDyke was asked by Lieutenant Andrew Smith if he would become the permanent desk officer for the day shift at the Fourth Precinct. When precincts did have permanent desk officers historically it was assigned to a senior officer of the shift.

The Fourth Precinct had 3 different Commanders during the time Officer VanDyke was the permanent desk officer. Officer VanDyke continually received high performance reviews and positive comments during his time on desk duty.

In 2009, Officer VanDyke started hearing disparaging remarks that clearly indicated there were people within the precinct who believed that Officer VanDyke represented what needed to be changed in the Minneapolis Police Department. These upper ranking officers believed they needed to the get the older officers to leave because the department was aging.

In early spring on 2009 Officer VanDyke was delivering some papers to his shift Lieutenant David Hayhoe. Officer VanDyke heard a conversation from within the Lieutenants office

3

suggesting that: "if VanDyke was put back on the streets maybe he will quit."

Later that spring 2009, Officer VanDyke was working at the desk when a co-worker approached him. In their conversation Officer VanDyke was asked how he could work the desk day in and day out. Officer VanDyke said, "it was not that bad." As they continued talking Officer VanDyke was told of a conversation heard where he was being criticized about the quality of the job he did at the front desk.

While this was going on Officer VanDyke started being accused of sleeping at the front desk by some of his supervisors.

Officer VanDyke was being closely monitored at the front desk and any behavior that did not have him looking active could cause an accusation that he was sleeping at the desk.

In late 2009, prior to the 2010 shift bidding time, Officer VanDyke was called into the Sergeant's Office by two of his supervisors for a meeting. Officer VanDyke was told that a decision had been made to put him back on street patrol. The explanation include statements like, some issues arising, some red flags as it were that was prompting the change, and that Officer VanDyke could also use a change. But, no specific problems were stated even when Officer VanDyke tried to challenge their decision. Officer VanDyke was told the change was temporary. Officer VanDyke was sent back to street patrol in December 2009.

In 2010, Officer VanDyke was still being told by co-worker that there were people in the administration who were pleased with Officer VanDyke being re-assigned back to the street could hasten his retirement.

### Other Senior Officers Who Were Re-Assigned

Mr. VanDyke has learned that he was not the only officer over 50 years old who had worked in a long time position who was re-assigned to street patrol in 2010 and 2011.

4

Changing an officers work assignment to a less desirable one is one of the techniques the Police Administrations used. But it can have mixed results, it does rely on the motivation of the person who is being targeted.

Officer VanDyke knew he could not retire in spite of what was being done to him by the upper brass. He needed to build up as much pension as he could in the few short years he had left to work.

**Paragraph Number 14**

**Officer VanDyke Re-assigned to Street Patrol**

Officer VanDyke had not worked street patrol as his permanent work assignment in 7 years. Officer VanDyke was assigned to squad car 410 or squad car 412. Both units were considered the busiest squad cars in North Minneapolis. Officer VanDyke was not assigned a partner or offered a refresher course to update him on the changes that had occurred during his 7 year absence on regular street patrol.  Officer VanDyke had received the standard updates that the other officers received but he never had to used them during his time working the desk. Not having hands on experience with the new information made it seem as if he had not learned it. Some of the changes were how the reports were entered into the CAPRS system. When he last worked the street entering reports through CAPRS was optional for many misdemeanors. Officers would dictate their reports to a transcriptionist who typed up the officers reports. Now in 2009 it was mandatory that the officers entered their own reports through the CAPRS report entry system. While Officer VanDyke was on desk duty he was never trained on the CAPRS report entry system. For the first 6 months that Officer VanDyke was back on the streets he hand wrote all his misdemeanor reports and then turned them in. Officer VanDyke did note that there were other officers who still turned in handwritten reports so he felt even though submitting reports through CAPRS was preferred, turning in handwritten report was still acceptable. That was until he was told that he had been forbidden from submitting any more handwritten reports. When Officer VanDyke was told this, he still had not been trained on CAPRS.  Officer VanDyke did finally receive a

5

one hour crash course on the CAPRS reporting system about 3 months after he was told that he could not submit hand written reports. While that Officer VanDyke was no longer allow to turn in handwritten report, even up to the day he was terminated, there were officers still turning in handwritten reports. There were other challenges Officer VanDyke was facing, the protocol for all felony arrests had also changed and he was supposed to know every change that had occurred. He was able to maneuver through most of the new procedures because he was able to ask other officers to explain the differences from the old way of doing it to how it was supposed to the new way it was being done.

Officer VanDyke felt he had being set up for failure. He was aware that at no point did his supervisors attempt to make his transition back to street patrol more than a disaster. But officers don't complain, they persevere, he persevered and still received a favorable performance review in 2010.

**Paragraph Number 15**
**Being Over Scrutinized**
**and**
**Internal Affairs**

Officer VanDyke had not been before an Internal Affairs panel since he was terminated in 1998. By the time he was terminated IAU investigations involving him had become a regular occurrence.

In 2010, Officer VanDyke was summoned to appear before IAU to answer allegations on four different complaints.

In 2011, Officer VanDyke was called before IAU to address allegations on five different complaints.

Every decision Officer VanDyke made in his life was up for police review, his professional life, as well as his private life. Officer VanDyke was even called into a IAU investigation to answer questions about a family emergency involved his granddaughters.

Not only was Officer VanDyke being harassed by the numerous requests for him to answer

6

complaints from the Internal Affairs Unit. His daily work was being monitoring, all Officer VanDyke reports were being evaluated. His reports were being returned for any mistyped words even when the report was still readable. Sergeant Novak always had the ability to correct the reports from his computer but he made a point of sending them back to Officer VanDyke as if the prove to Officer VanDyke was not as conscientious and careful as he needed to be.

Many of the perks that officers could rely on were not being offered to Officer VanDyke. Choice of off days, being allowed to have ride-alongs for reason that were trite at best.

Officer VanDyke was being "flagged" his name was checked for and anytime his name came up it was given special attention.

Officer VanDyke did get some relief from the stress being imposed upon him in 2011. He was sent to the Fourth Precinct Property Crimes Unit for what was called career enrichment. He reassignment was for 90 days. During that time away from the oversight that he had endured, his stress lowered. He was recieving encouragement from the Lieutenant and he received a glowing performance evaluation when he went back on the streets. Lieutenant Kim Lund, head of the unit, did request that Officer VanDyke be allowed to stay longer but her request was denied.

After much complaining for a partner Officer VanDyke was finally partnered up with Officer Brendon Schram in January 2012. But, it did nothing to stop the scrutiny of Officer VanDyke.

Officer VanDyke walked around for two years with the fear that at anytime he would have to appear again before Internal Affair for another series of complaints, or he could be handed a very sever punishment.

On May 10, 2012 Officer VanDyke received the IAU's decision after 2 years on the events that occurred in 2010 and 2011. He received a Letter Of Reprimand MPD P/P 3-801 Off -Duty Employment-No prior approval to work job site SUSTAINED.
He received 20 hours suspension without pay for MPD P/P 5-102(2) Professional Code Of Conduct,

7

failure to take appropriate police action. Category B. This was for the rape victim

He received 10 hours suspension without pay for MPD P/P 7-501.01 Traffic Accident Reports...SUSTAINED (Category C)

He received 10 hours suspension without pay for MPD P/P 5-102 Code of Ethics...SUSTAINED (Category C) P/P 5-106  On Duty Code of Conduct...SUSTAINED (Category C)

These multiple sustained allegations in the amount of time they were received would have helped pave the way for the Minneapolis Police Department to go after Officer VanDyke for progressive discipline. While they were building their case for progressive discipline against Officer VanDyke a new investigation involving him was initiated.

### Paragraph Number 16
### Officer VanDyke's Termination

Officer VanDyke's termination on November 30, 2012 was based on a flawed investigation involving a call he and his partner answered on May 3, 2012. The allegation was that Officer VanDyke intented to withhold property that had to be inventoried. The evidence the Minneapolis Police Department presented was skewed to support a biased agenda, which was to remove Officer VanDyke from the decision as to when he would leave the Minneapolis Police Department.

### Conclusion

Officer VanDyke will take the opportunity through this lawsuit to prove these statements true and for the vindication of his chosen career.



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Minneapolis Area Office**

330 South Second Avenue, Suite 720
Minneapolis, MN 55401-2224
Intake Information Group: (800) 669-4000
Intake Information Group TTY: (800) 669-6820
Minneapolis Status Line: (866) 408-8075
Minneapolis Direct Dial: (612) 335-4041
TTY (612) 335-4045
FAX (612) 335-4044

Mr. Rickey Van Dyke
4100 27th Avenue South
Minneapolis, MN 55406

RE: Rickey Van Dyke vs. Minneapolis Police Department, EEOC Charge Number: 444-2013-01500

To Mr. Van Dyke:

The Equal Employment Opportunity Commission (EEOC) has completed its investigation of the charge of discrimination you filed against the Minneapolis Police Department. Based on the evidence that we obtained, we were not able to conclude that a violation of the statutes enforced by the EEOC occurred. Therefore, the EEOC has dismissed your charge and issued you a Notice of Right to Sue. This Right to Sue grants you the right to file a lawsuit against the Respondent within 90 days of your receipt of this letter. If you do not file a lawsuit within 90 days of receipt, your right to sue will be lost and cannot be restored by the EEOC. We have enclosed an information sheet regarding suing in federal district court should you wish to pursue your claim further.

Should you have any additional questions, you may contact me at (612) 334-4004.
I hope this information is helpful.

Sincerely,

10-24-13
Date

Leah Sutherlin
Investigator

Enclosure