UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Rickey Paul VanDyke, Sr., | **Case No. 14-cv-224 (SRN/SER)** |
| Plaintiff, | |
| v. | |
| | **REPORT & RECOMMENDATION** |
| The Minneapolis Police Department, | |
| Defendant. | |

Rickey Paul VanDyke, Sr., *Pro Se*, 4100 27th Avenue South, Minneapolis, Minnesota 55406.

Darla J. Boggs, Esq., Minneapolis City Attorney's Office, 350 South 5th Street, Room 210, Minneapolis, Minnesota 55415, for Defendant.

STEVEN E. RAU, United States Magistrate Judge

This matter is before the undersigned on Defendant Minneapolis Police Department's ("MPD") Motion to Dismiss [Doc. No. 7]. This matter has been referred for the resolution of pretrial matters pursuant to 28 U.S.C. § 636(b)(1)(A), (B), and (C), and District of Minnesota Local Rule 72.1. (Order of Reference) [Doc. No. 12]. For the reasons stated below, the Court recommends that the Motion to Dismiss be granted in part and denied in part.

I.      BACKGROUND

A.      Factual Background

Plaintiff Rickey Paul VanDyke, Sr. ("VanDyke") worked for MPD for over 29 years. (Compl.) [Doc. No. 1 at 7–8].[1] In 1998, he was terminated because he was charged with two

---

[1]     The Court refers to page numbers assigned by the CM/ECF system to the Complaint for ease of reference, and because the Complaint appears to contain several documents filed as one document. These documents include the Complaint, based on a District of Minnesota form, an

gross misdemeanors. (*Id.* at 8). He was later reinstated with back pay, but in the interim "had to utilize his pension for income." (*Id.*). In 2004, he became a permanent desk officer and in that position received "high performance reviews and positive comments." (*Id.*). That situation changed in 2009. (*Id.*). In 2009, VanDyke began to hear "disparaging remarks," including that some people thought "VanDyke represented what needed to be changed in the [MPD]" and "upper ranking officers believed they needed to get the older officers to leave because the department was aging." (*Id.*). In spring 2009, VanDyke overheard a conversation in Lieutenant David Hayhoe's office that "if VanDyke was put back on the streets maybe he will quit." (*Id.* at 8–9) (internal quotation marks omitted). Later that same spring, a coworker informed VanDyke that the quality of VanDyke's performance at the front desk was criticized, and some of VanDyke's supervisors accused him of sleeping at the front desk. (*Id.* at 9). VanDyke's supervisors subsequently told him he was being put back on street patrol temporarily. (*Id.* at 9). Although no specifics were provided, the supervisors referenced "some red flags" and suggested VanDyke could "use a change." (*Id.*). In 2010, a coworker told VanDyke that others thought his reassignment to street patrol "could hasten his retirement." (*Id.*). VanDyke alleges that other officers over the age of 50 were reassigned to street patrol in 2010 and 2011, and that moving an "officer[']s work assignment to a less desirable one is one of the techniques" MPD used. (*Id.* at 9–10).[2]

---

attachment with additional explanation of VanDyke's claims, and the Equal Employment Opportunity Commission ("EEOC") Right to Sue letter. *See* (Compl.).

[2]    Earlier in the Complaint, VanDyke described three techniques used to achieve "wanted results," meaning ending VanDyke's employment with MPD. *See* (Compl. at 7). Those techniques are changing a work assignment to a less desirable one, being overly critical of an employee, and allowing all concerns and complaints to be submitted to the Internal Affairs Unit ("IAU"). (*Id.*).

When VanDyke was reassigned to street patrol, it was the first time in seven years that he had been assigned to such work. (*Id.* at 10). He was not assigned a partner, and did not receive any training or information on the changes that took place since he was last assigned to street patrol. (*Id.*). One specific change was that reports were now submitted using the CAPRS system, on which VanDyke received no training. (*Id.*). Although he knew that it was preferred that reports be submitted through CAPRS, he continued to turn in handwritten reports, believing it was acceptable because he saw other officers doing it. (*Id.*). He was later told that was not the case. (*Id.*). Three months later, he received training on the CAPRS system. (*Id.* at 10–11). Other officers continued to turn in handwritten reports. (*Id.* at 11). Despite this and other challenges, VanDyke received a favorable performance review in 2010. (*Id.*).

In 2010 and 2011, VanDyke appeared before the IAU to address nine separate complaints. (*Id.*).[3] The appearances included review of professional and private life events. (*Id.*). Additionally, reports were returned to him for mistakes as minor as mistyped words, although the reports were still readable and another officer had the ability to correct the reports. (*Id.* at 12). VanDyke did not have his choice of days off or ride-alongs, his name was flagged, and anything that involved him received special attention. (*Id.* at 12).

In 2011, VanDyke received a 90-day assignment to the Fourth Precinct Property Crimes Unit. (*Id.*). His stress was lower, and he received encouragement and "a glowing performance evaluation." (*Id.*). The unit supervisor's request to extend VanDyke's assignment was denied. (*Id.*).

After several requests for a partner, Brendon Schram was assigned to be VanDyke's partner in January 2012, although the scrutiny continued. (*Id.*). VanDyke was concerned that he

---

[3]     Four of these appearances were in 2010, and five were in 2011. (Compl. at 11).

would have to appear before the IAU again, and that "he could be handed a very sever[e] punishment." (*Id.*).

On May 10, 2012, VanDyke was informed of the IAU's decision regarding the incidents that took place in 2010 and 2011. (*Id.* at 12). In total, he received one letter of reprimand and forty hours of suspension without pay. (*Id.* at 12–13). VanDyke alleges that these decisions "would have helped pave the way for [MPD] to go after [him] for progressive discipline . . . ." (*Id.* at 13).

On May 3, 2012, VanDyke and his partner answered a call that led to an allegedly flawed investigation. (*Id.*). "The allegation was that Officer VanDyke inten[d]ed to withhold property that had to be inventoried." (*Id.*). MPD's evidence "was skewed to support a biased agenda . . . to remove Officer VanDyke from the decision as to when he would leave the [MPD]." (*Id.*).

**B.    Procedural History**

VanDyke filed this employment discrimination action on January 23, 2014, against his former employer, MPD. (Compl.). He filed an Amended Compliant on May 22, 2014, and the MPD, through the City of Minneapolis, moved to dismiss. (Am. Compl.) [Doc. No. 4];[4] (Mot. to Dismiss). VanDyke responded, and both sides filed replies. (VanDyke's Resp.); (MPD's Reply Mem. of Law in Supp. of Mot. to Dismiss, "MPD's Reply") [Doc. No. 21]; (VanDyke's Reply

---

[4]    In the Amended Compliant, VanDyke states "See Attachment" in the space for describing specific facts of the claim. (Am. Compl. at 3–4). No additional pages are attached to the Amended Complaint, and VanDyke states that he presumed that because his "written insert" was presented with the original Complaint, it would also be part of the Amended Complaint. (Resp., "VanDyke's Resp.") [Doc. No. 19 at 8]. MPD likewise construes the Complaint and Amended Complaint together as one document. (MPD's Mem. of Law in Supp. of Mot. to Dismiss, "MPD's Mem. in Supp.") [Doc. No. 9 at 1 n.1]. Typically, an amended complaint "renders the original complaint without legal effect." *In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d 922, 928 (8th Cir. 2005). But in light of VanDyke's Response, and in an effort to construe VanDyke's pleadings liberally, the Court construes the Amended Complaint to incorporate the original Complaint, and cites to the Complaint as the source of VanDyke's factual assertions.

Mem. of Law in Opp'n of Mot. to Dismiss, "VanDyke's Reply") [Doc. No. 23].[5] The Court

heard oral argument on October 2, 2014. (Minute Entry Dated Oct. 2, 2014) [Doc. No. 24].

## II.    DISCUSSION

The Complaint includes VanDyke's Right to Sue letter from the EEOC. (Compl. at 14).

VanDyke's employment discrimination claim is based on the Age Discrimination in

Employment Act of 1967 ("ADEA"), and purportedly covers the time period of 2009 through

2012. (Compl. at 2–3); *see also* 29 U.S.C. §§ 621, *et seq.* VanDyke claims this discrimination

ultimately resulted in his termination at age 62. (Compl. at 7); *see also* (*id.* at 5). VanDyke

planned to work until he was 65. (*Id.* at 8).

MPD argues that VanDyke's Complaint should be dismissed because his claim is time-

barred and he failed to exhaust the required administrative remedies, his Complaint fails to state

a claim upon which relief can be granted, and res judicata bars his claims. (MPD's Mem. of Law

in Supp. of Mot. to Dismiss, "MPD's Mem. in Supp.") [Doc. No. 9 at 9–16].

---

[5]     MPD points out that, after seeking two extensions, VanDyke's Response was filed after
the Court-ordered deadline of September 8, 2014. (MPD's Reply at 3–4). VanDyke says this was
due to his mislabeling of the envelope. (VanDyke's Reply at 2). The Court finds VanDyke
attempted to comply with this Court's Order and MPD is not prejudiced by the delay. Therefore,
the Court will consider VanDyke's Response. MPD also notes it received a slightly revised
version of VanDyke's Response, compared with what was filed on CM/ECF. (MPD's Reply at 4
n.2). The Court will only review the documents filed on CM/ECF.
        Additionally, VanDyke's Reply was filed in contravention to Local Rule 7.1(i), which
states, "Except with the court's prior permission, a party must not file a memorandum of law
except as expressly allowed under LR 7.1." *See Williams v. Walski*, No. 12-cv-2954 (SRN/JSM),
2014 WL 4639580, at *4 (D. Minn. Sept. 16, 2014) ("While it is true that pro se litigants'
submissions and arguments are to be viewed liberally and with leniency, pro se litigants are not
excused from compliance with procedural and substantive rules."). Although the Court does not
condone any party's noncompliance with the applicable procedural rules, the Court finds MPD
was not prejudiced by VanDyke's Reply, and both parties actively participated in the hearing.
Therefore, the Court will consider VanDyke's Reply to the extent it is helpful to explain his
opposition to the Motion to Dismiss.

### A. General Legal Standard

In considering a motion to dismiss under Rule 12(b)(6), a court must determine whether the complaint contains "sufficient factual matter . . . to state a claim to relief that is plausible on its face." *Zutz v. Nelson*, 601 F.3d 842, 848 (8th Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted)). A court accepts the facts alleged in the complaint as true, and grants "reasonable inferences in favor of the nonmoving party." *Lind v. Midland Funding, L.L.C.*, 688 F.3d 402, 405 (8th Cir. 2012). Legal conclusions "must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679.

When "matters outside the pleadings are presented to and not excluded by the court" in a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the motion must be considered a motion for summary judgment under Rule 56.  Fed. R. Civ. P. 12(d); *Gibb v. Scott*, 958 F.2d 814, 816 (8th Cir. 1992). But materials that are a matter of public record or necessarily embraced by the pleadings may be considered in the court's discretion without converting a motion to dismiss to a motion for summary judgment. *Hile v. Jimmy Johns Highway 55, Golden Valley*, 899 F. Supp. 2d 843, 847 (D. Minn. 2012) (SRN/TNL) (citing *Stahl v. U.S. Dep't of Agric.*, 327 F.3d 697, 701 (8th Cir. 2003)).

Pro se pleadings are construed liberally, however, they may not be "merely conclusory." *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980). A pro se complaint "must allege facts, which if true, state a claim as a matter of law." *Id.*

### B.      Administrative Remedies

### 1.      Additional Legal Standard

Before filing an action under the ADEA in federal court, a plaintiff must first exhaust his

or her administrative remedies. *Parisi v. Boeing Co.*, 400 F.3d 583, 585 (8th Cir. 2005); *see also*

29 U.S.C. § 626(d) ("No civil action may be commenced by an individual under this section until

60 days after a charge alleging unlawful discrimination has been filed with the Equal

Employment Opportunity Commission.").

> The reason for requiring the pursuit of administrative remedies first is to provide
> the EEOC with an initial opportunity to investigate allegations of employment
> discrimination and to work with the parties toward voluntary compliance and
> conciliation. The proper exhaustion of administrative remedies gives the plaintiff
> a green light to bring [his or] her employment-discrimination claim, along with
> allegations that are like or reasonably related to that claim, in federal court.
> Although we have often stated that we will liberally construe an administrative
> charge for exhaustion of remedies purposes, we also recognize that there is a
> difference between liberally reading a claim which lacks specificity, and
> inventing, *ex nihilo*, a claim which simply was not made. The claims of
> employment discrimination in the complaint may be as broad as the scope of the
> EEOC investigation which reasonably could be expected to result from the
> administrative charge.

*Parisi*, 400 F.3d at 585 (internal citations and quotation marks omitted).

MPD argues VanDyke failed to exhaust his administrative remedies with respect to any

actions MPD took prior to VanDyke's termination because his EEOC charge was limited to the

date of his termination, November 30, 2012; VanDyke did not check the box labeled "continuing

action" on his EEOC charge form; and because VanDyke's "general allegations of age

discrimination" in his EEOC charge do not include any factual basis describing ongoing or

continuing violations of the ADEA. (MPD's Mem. in Supp. at 10–12); *see also* (MPD's Reply at

4–7).

VanDyke concedes that the dates of discrimination in his EEOC charge are incorrect, and that, in the box labeled "Date(s) Discrimination Took Place," it should read "Earliest: Spring 2009, Latest: November 30, 2012." (VanDyke's Resp. at 8). But he later asserts that "[h]e has consistently stated that the mistreatment started in 2007," including in a statement "to the intake counselor when he filed his charge of discrimination" and "in his Employment Discrimination Complaint." (VanDyke's Reply at 3).

### 2.    Analysis

Here, the Court considers VanDyke's EEOC Charge of Discrimination ("EEOC Charge") a matter of public record. *See Blakley v. Schlumberger Tech. Corp.*, 648 F.3d 921, 931 (8th Cir. 2011) ("We have previously held that an EEOC charge is a part of the public record and may be considered on a motion to dismiss.") (citing *Faibisch v. Univ. of Minn.*, 304 F.3d 797, 802–03 (8th Cir. 2002)).

The Court finds that, to the extent VanDyke alleges discrimination as part of an ongoing or continuing violation of the ADEA, he has failed to exhaust his administrative remedies. In his EEOC charge, VanDyke lists both the earliest and latest date of discrimination as November 30, 2012. (Charge of Discrimination, "EEOC Charge," Ex. A, Attached to Aff. of Darla J. Boggs, "Boggs Aff.") [Doc. No. 10-1]. In addition, the EEOC Charge form includes a box labeled "continuing action," which VanDyke left blank. (*Id.*). Finally, the narrative of VanDyke's discrimination provided in the EEOC Charge does not place the EEOC on notice that there was any violation before his termination on November 30, 2012. *See* (*id.*). The entirety of this narrative states:

> I.    I was employed by the above-named Respondent during the relevant period. While employed, I was accused of misconduct and was terminated. I believe this is based on my age/62.

II.     Respondent's reason for adverse action: none given.

III.    It is my belief that I was discriminated against based on my age/62 in violation of the Age Discrimination Act of 1967 [sic], as amended.

(*Id.*). While "during the relevant period" might arguably be ambiguous, the only other dates on the EEOC Charge are VanDyke's date of birth and the earliest and latest dates of the discrimination. (*Id.*). There is nothing in the EEOC Charge suggesting that the EEOC's investigation should extend beyond VanDyke's employment termination. *See Parisi*, 400 F.3d at 585 ("The claims of employment discrimination in the complaint may be as broad as the scope of the EEOC investigation which reasonably could be expected to result from the administrative charge.").

To the extent VanDyke argues that he told an intake counselor that discrimination began in 2007, that information is not reflected in his EEOC Charge, which is the only information before the Court that provides any insight the EEOC's investigation. *See* (EEOC Charge); (VanDyke's Reply at 3). Additionally, to the extent any allegations of discrimination predating VanDyke's termination constitute discrete acts that would be separately actionable, the 300-day statute of limitations period has now lapsed. *See Tademe v. Saint Cloud State Univ.*, 328 F.3d 982, 988 (8th Cir. 2003) (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002)) (stating that "'discrete acts' . . . are 'not actionable if time barred, even when they are related to acts alleged in timely filed charges[]'" and finding that the plaintiff's alleged discrimination claim based being denied tenure was a discrete act, "even though the effects of that decision were felt much later.").

While sympathetic to VanDyke's position as a pro se litigant, the Court construes and considers the EEOC process to be designed to facilitate investigation and resolution of disputes. *See Parisi*, 400 F.3d at 585. The Court cannot read a continuing violation claim into VanDyke's

EEOC charge where none was made. *See id.* To allow "a complaint to encompass allegations outside the ambit of the predicate EEOC charge would circumscribe the EEOC's investigatory and conciliatory role, as well as deprive the charged party of notice of the charge, as surely as would an initial failure to file a timely EEOC charge." *Williams v. Little Rock Mun. Water Works*, 21 F.3d 218, 223 (8th Cir. 1994) (internal quotation marks and citations omitted). Therefore, the Court must conclude that to the extent VanDyke's complaint alleges a continuing violation, that claim is barred because VanDyke failed to exhaust the administrative procedure regarding this claim.[6]

### C.     Failure to State a Claim

In light of the foregoing analysis, the Court must determine whether the allegations related to VanDyke's termination state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). Under the ADEA, it is "unlawful for an employer . . . to discharge . . . any individual . . . because of such individual's age." 29 U.S.C. § 623(a)(1). A prima facie case requires the following evidence: "(1) [the plaintiff] is 40 years old or older, (2) he was qualified for the job, (3) he was discharged, and (4) age was a factor in the employer's decision to terminate him." *Chambers v. Metro. Prop. & Cas. Ins. Co.*, 351 F.3d 848, 855 (8th Cir. 2003).

---

[6]     VanDyke cites an Eighth Circuit case for the proposition that the Eighth Circuit "'considerably narrowed its view of what is likely [sic] or reasonably related to the originally filed EEOC allegation.'" (VanDyke's Reply at 3) (quoting *Richter v. Advance Auto Parts, Inc.*, 686 F.3d 847, 852 (8th Cir. 2012)). VanDyke states that his failure to put in the correct dates "does not appear to have been what the Eighth Circuit Court meant in *Richter* . . . when it spoke about exhaustion of administrative remedies." (*Id.*). VanDyke is correct that *Richter* is not instructive in his case. *See Richter*, 686 F.3d at 853 (concluding that the plaintiff failed to exhaust her administrative remedies because her retaliation claim was not reasonably related to her EEOC charge, which was filed before the alleged retaliation action took place). Nonetheless, for VanDyke's continuing action discrimination claims to be exhausted, the EEOC, and the MPD (through the EEOC process), must have received notice that VanDyke intended to make discrimination claims dating as far back as 2007 or 2009, and his EEOC charge does not reflect that time period.

But a prima facie case is not required at the pleading stage of an employment discrimination case. *Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 511 (2002); *see also Ring v. First Interstate Mortg., Inc.*, 984 F.2d 924, 926 (8th Cir. 1993) ("[T]he prima facie case . . . is an evidentiary standard—it defines the quantum of **proof** plaintiff must present to create a rebuttable presumption of discrimination that shifts the burden to defendant to articulate some legitimate, nondiscriminatory reason for its conduct. Under the Federal Rules of Civil Procedure, an evidentiary standard is not a proper measure of whether a complaint fails to state a claim."). Instead, "an employment discrimination plaintiff need only give the defendant fair notice of what the plaintiff's claims are and the grounds upon which they rest." *Martin v. ReliaStar Life Ins. Co.*, 710 F. Supp. 2d 875, 887 (D. Minn. 2010) (MJD/AJB) (internal quotation marks omitted).

MPD argues VanDyke's Complaint "is devoid of the necessary factual enhancements of events surrounding his charge as required under *Iqbal*." (MPD's Mem. in Supp. at 14). Additionally, it argues VanDyke does not allege who made the offending comments or whether he reported them. (*Id.*).

The parties do not dispute VanDyke's age or that he was terminated. With respect to the circumstances surrounding his termination, VanDyke states the following:

> Officer VanDyke's termination on November 30, 2012 was based on a flawed investigation involving a call he and his partner answered on May 3, 2012. The allegation was that Officer VanDyke inten[d]ed to withhold property that had to be inventoried. The evidence the [MPD] presented was skewed to support a biased agenda, which was to remove Officer VanDyke from the decision as to when he would leave the [MPD].

(Compl. at 13). The Complaint clearly indicates it is an employment discrimination lawsuit based on the ADEA. (*Id.* at 2). In addition, VanDyke's EEOC Charge states, "While employed, I was accused of misconduct and was terminated. I believe this is based on my age/62." (EEOC Charge).

The Court finds that the Complaint adequately puts the MPD on notice that VanDyke

alleges he was terminated based on his age, and the factual circumstances that led to his

termination include a flawed investigation regarding alleged misconduct and evidence that

supports a biased agenda. *See* (Compl. at 13); *see also Mallory v. Express Emp't Prof'ls*, Civ.

No. 12-1645 (DWF/JJK), 2012 WL 6194404, at *6 (D. Minn. Nov. 19, 2012) (stating that in a

race-based failure-to-hire claim, "a complaint that alleges that the plaintiff belongs to a protected

class, was qualified for a particular position, and was denied the position, and that someone from

outside the protected class was hired, would be sufficient to survive a motion to dismiss."),

*report and recommendation adopted by* 2012 WL 6193340 (Dec. 12, 2012); *Ries v. Winona*

*County*, Civ. No. 10-1715 (JNE/JJK), 2010 WL 3515722, at *10 (D. Minn. July 28, 2010) ("And

although his Complaint and the documents it embraces do not contain detailed factual allegations

regarding the precise manner in which Defendant acted with the age-based discriminatory motive

that is the hallmark of an ADEA claim, his pleading demonstrates the grounds of his entitlement

to relief with sufficient clarity to allow Defendant to prepare a defense.") *report and*

*recommendation adopted by* 2010 WL 3515716 (Aug. 31, 2010).[7] Regardless of the "longterm

viability" of VanDyke's claim, "'the issue is not whether a plaintiff will ultimately prevail but

whether the claimant is entitled to offer evidence to support the claims.'" *Sallis v. Univ. of Minn.*,

No. Civ. 02-1275 (RHK/RLE), 2003 WL 21781916, at *2 (D. Minn. July 31, 2003) (quoting

---

[7]     To the extent VanDyke submits additional facts regarding the Internal Affairs Unit's involvement in the investigation leading to his termination, these unpleaded facts cannot be considered under the motion to dismiss standard. *See* (VanDyke's Resp. at 4–5, 7); *see also McAuley v. Fed. Ins. Co.*, 500 F.3d 784, 787 (8th Cir. 2007) (stating that written evidence in support of a pleading "that provide[s] some substantiation for and does not merely reiterate what is said in the pleadings" is considered a "matter outside the pleadings" to be excluded in the consideration of a motion to dismiss); *but see* (VanDyke's Reply at 4) ("[VanDyke] offered more information in his Memorandum of Law in Opposition of the Motion to Dismiss which he expects the Court will use to in [sic] making its decision.").

*Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). The Court must grant "reasonable inferences" in

favor of VanDyke and construe the Complaint liberally. *Lind*, 688 F.3d at 405; *Martin*, 623 F.2d

at 1286. Therefore, the Court recommends that MPD's Motion to Dismiss be denied with respect

to VanDyke's age discrimination claim based on the circumstances surrounding his termination.

### D.     Res Judicata

MPD argues VanDyke's claim is barred by res judicata and collateral estoppel because he

appealed his termination to a Civil Service Commission, which upheld the termination. (MPD's

Mem. in Supp. at 15–16). In support, MPD relies on the Civil Service Commission's

recommendation for the proposition that its "determination specifically ruled on the merits of

[VanDyke's] claims, including age discrimination." (MPD's Mem. in Supp. at 16) (citing

Findings of Fact, Conclusions of Law and Recommendation, Minneapolis Civil Serv. Comm'n,

"Comm'n Recommendation," Ex. D, Attached to Boggs Aff.) [Doc. No. 10-4]. MPD also

submitted the order that adopts the Commission's Recommendation. (Civil Serv. Comm'n for

the City of Minneapolis Order, In Re: the Recommendation for Discharge of Ricky VanDyke,

Police Officer, MPD, "Comm'n Order," Ex. E, Attached to Boggs Aff.) [Doc. No. 10-5].

MPD argues that the application of res judicata may be determined on a motion to

dismiss if the facts that establish it are available "'from the allegations of the complaint, the

documents (if any) incorporated therein, matters of public record, and other matters of which the

court may take judicial notice.'" (MPD's Mem. in Supp. at 15) (quoting *Skoda v. Lilly USA LLC*,

Civil No. 10-cv-4865 (MJD/LIB), 2011 WL 3100342, at *5 (D. Minn. Apr. 11, 2011)). MPD

argues the Commission Recommendation and Commission Order are matters of public record.

*See* (MPD's Mem. in Supp. at 8–9). VanDyke asks that the Commission's decision (presumably

both the Commission Recommendation and the Commission Order) be considered. (VanDyke's

Resp. at 6–7).[8]

MPD argues that this Court may take judicial notice of these documents because they

constitute "final judgment" and "public documents," but points to no authority describing the

Commission Recommendation and Commission Order as public documents. (MPD's Mem. in

Supp. at 3 n.3, 8–9). Nor does the MPD direct the Court to any source making such documents

publically available. *See* (*id.*). While the Court is hesitant to determine that these documents can

be appropriately considered in the context of a motion to dismiss without converting the motion

into one for summary judgment based solely on MPD's assertions, it need not decide the issue

because, even if they are, MPD's claim of res judicata fails.

Res judicata, or claim preclusion, is determined by the forum state's law. *See Laase v.*

*County of Isanti*, 638 F.3d 853, 856 (8th Cir. 2011) ("The law of the forum that rendered the first

judgment controls the res judicata analysis.") (internal quotation marks omitted). In Minnesota,

> Res judicata applies as an absolute bar to a subsequent claim when (1) the earlier
> claim involved the same set of factual circumstances; (2) the earlier claim
> involved the same parties or their privies; (3) there was a final judgment on the
> merits; (4) the estopped party had a full and fair opportunity to litigate the matter.

---

[8]     VanDyke asks that the Internal Affairs Case Summary he submitted also be considered.
(VanDyke's Resp. at 6–7); *see also* (MPD, Internal Affairs Unit, Admin. Case #12-72, "Case
Summary," Ex. A) [Doc. No. 20 at 1–29]. VanDyke makes no argument that the Case Summary
is a public document or otherwise entitled to consideration at this stage. *See generally*
(VanDyke's Resp.). Although the Court has discretion to convert a motion to dismiss to a motion
for summary judgment when matters outside the pleadings are submitted, the Court declines to
do so. *See* Fed. R. Civ. P. 12(d); *Skyberg v. United Food & Commercial Workers Int'l Union,*
*AFL-CIO*, 5 F.3d 297, 302 n.2 (8th Cir. 1993) ("A court has wide discretion in electing to
consider matters outside the pleadings."). Therefore, the Court declines to consider the Case
Summary at this stage.
       VanDyke submitted two other exhibits. In Exhibit B, VanDyke submitted his Compliant
and Amended Complaint. *See* (Complaint, Amended Complaint, Ex. B) [Doc. No. 20 at 30–48].
These documents are properly before the Court on the instant Motion to Dismiss. Exhibit C is his
Charge of Discrimination (initially submitted by MPD), which, as discussed above, is considered
a matter of public record. (*See* Charge of Discrimination, Ex. C) [Doc. No. 20 at 49].

*Hauschildt v. Beckingham*, 686 N.W.2d 829, 840 (Minn. 2004). All four requirements must be met for res judicata to apply. *Id.* Additionally, the "claims cannot be considered the same cause of action if the right to assert the second claim did not arise at the same time as the right to assert the first claim." *Id.* at 841. Res judicata applies to claims "actually litigated," as well as "all claims that could have been litigated in the earlier action." *Id.* Minnesota has held that "res judicata applies in spirit at least where an agency acts in a judicial or quasi[-]judicial capacity," but "neither collateral estoppel nor res judicata is rigidly applied. Both rules are qualified or rejected when their application would contravene an overriding public policy." *AFSCME Council 96 v. Arrowhead Reg'l Corr. Bd.*, 356 N.W.2d 295, 299 (Minn. 1984) (internal quotation marks and citations omitted).

MPD argues VanDyke's appeal to the Commission involved the same set of factual circumstances and the same parties. (MPD's Mem. in Supp. at 15–16). MPD also argues the Commission held a quasi-judicial proceeding, and because VanDyke did not appeal it, it became final. (*Id.*). Finally, MPD argues the "Commission's determination specifically ruled on the merits of [VanDyke]'s claims, including age discrimination." (*Id.*) (citing Comm'n Recommendation). VanDyke argues res judicata should not apply because testimony he gave to the Internal Affairs investigator was not proven false, and facts will show a reasonable jury "that there was no attempt to do any fact checking on the statements . . . VanDyke gave during his two Garrity [s]tatements. . . . [and] the Civil Service Commission decision should not be the only exhibit shown to this court."[9] (VanDyke's Resp. at 7). VanDyke also disputes the extent to which he presented evidence. *See* (VanDyke's Reply at 5–7).

---

[9]    A *Garrity* statement is "a compelled statement by a police officer concerning an incident or complaint that is not admissible in a subsequent criminal prosecution absent a waiver."

The issue before the Commission was whether MPD had cause to recommend the discharge of VanDyke based on misconduct. (Comm'n Recommendation at 1). In the context of extenuating circumstances, the Commission found there was no evidence that the recommendation to terminate him was "motivated by his age." (*Id.* at 14, 15–16). The record before the Court at this stage, however, does not clarify whether VanDyke had an opportunity to engage in discovery or present evidence beyond his own testimony, as he would have in federal court. *See* (*id.*). Additionally, while many issues may overlap, the Court cannot conclusively determine at this early stage that VanDyke, who has the burden of proof in a federal case, "had a full and fair opportunity to litigate the matter." *Hauschildt*, 686 N.W.2d at 840; *see Eldredge v. City of St. Paul*, 809 F. Supp. 2d 1011, 1037 (D. Minn. 2011) (SRN/JSM) (determining, at the summary judgment stage, that collateral estoppel did not apply following a St. Paul Civil Service Commission "full evidentiary hearing," because the St. Paul Civil Service Commission addressed whether the plaintiff could be terminated for one of two reasons, and the plaintiff's discrimination claims "encompass a broader range of underlying factual conduct and legal elements."). This analysis does not foreclose MPD from raising the issue of res judicata at a later stage of the proceedings, such as summary judgment, when the Court may have the benefit of reviewing the entirety of the Civil Service Commission record and other related documents.

### E.     Collateral Estoppel

MPD mentions that collateral estoppel applies in the same heading as res judicata. (MPD's Mem. in Supp. at 15). Although res judicata and collateral estoppel are related doctrines, collateral estoppel is "a miniature of res judicata" and "applies to specific legal issues that have been adjudicated." *Hauschildt*, 686 N.W.2d at 837 (internal quotation marks and citations

---

*Fischer v. Steward*, No. 4:07CV01798, 2010 WL 147865, at * 2 (E.D. Mo. Jan. 11, 2010) (citing *Garrity v. New Jersey*, 385 U.S. 493 (1967)).

omitted). Because MPD does not provide any separate argument in its opening memorandum or its reply regarding why collateral estoppel applies, or, more importantly, to what "specific legal issues" collateral estoppel would apply, the Court does not address it. *See* (MPD's Mem. in Supp. at 15–16) (MPD's Reply at 8–10).

### F.       Failure to Name the Correct Defendant

MPD argues in a footnote that the Complaint should be dismissed for failure to name the City of Minneapolis as a defendant because the MPD cannot be sued. *See* (MPD's Mem. in Supp. at 1 n.1); *see also* (MPD's Reply at 1 n.1). VanDyke responds that he did not understand that the City of Minneapolis was the correct defendant, and expresses an interest in amending his Complaint to reflect this change. (VanDyke's Resp. at 8). MPD points to no authority that a failure to name the correct defendant is grounds for dismissal of the Complaint. The Court finds naming the MPD, as opposed to the City of Minneapolis, is not a sufficient ground for dismissal. The parties do not dispute that the City of Minneapolis is the correct defendant, and the City of Minneapolis has no grounds to argue that they were prejudiced by this error where it was clearly aware of the instant lawsuit, as evidenced by the instant Motion to Dismiss filed by the City of Minneapolis. (Mot. to Dismiss). Additionally, the MPD/City of Minneapolis, as the moving party, failed to file a meet-and-confer statement in accordance with Local Rule 7.1, which is required to encourage the parties to resolve motions, in whole or in part. Therefore, the Court recommends that the parties be ordered to meet-and-confer to determine if this technical issue can be resolved through a stipulation.

## III.    RECOMMENDATION

Based on all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that Defendant the Minneapolis Police Department's Motion to Dismiss [Doc. No. 7] be **GRANTED in part** and **DENIED in part** as follows:

1.    To the extent the Motion to Dismiss seeks to dismiss claims of a continuing violation under the Age Discrimination in Employment Act of 1967, the Court recommends the Motion be **GRANTED**;

2.    The Court recommends the Motion be **DENIED** in all other respects; and

3.    The Court recommends the parties be ordered to meet and confer regarding identifying and naming the proper defendant.

Dated: December 22, 2014

*s/Steven E. Rau*
STEVEN E. RAU
United States Magistrate Judge

Under D. Minn. LR 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **<u>January 5, 2015</u>**, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals. A party may respond to the objecting party's brief within fourteen days after service thereof. A judge shall make a de novo determination of those portions to which objection is made. This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable to the Court of Appeals.