**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| Rickey Paul VanDyke, Sr., | Civil No. 14-224 (SRN/SER) |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER** |
| City of Minneapolis, | |
| Defendant. | |

Rickey Paul VanDyke, Sr., Pro Se, 4100 27th Avenue South, Minneapolis, MN 55406

Kristin R. Sarff, Lindsey E. Middlecamp, Sara J. Lathrop, and Tracey N. Fussy, Minneapolis City Attorney's Office, 350 South Fifth Street, Room 210, Minneapolis, MN 55415, for Defendant.

SUSAN RICHARD NELSON, United States District Judge

This matter is before the Court on the Report and Recommendation ("R&R") of Magistrate Judge Steven E. Rau dated May 20, 2016 [Doc. No. 70]. The R&R recommends granting the Motion for Summary Judgment brought by Defendant, the City of Minneapolis [Doc. No. 48] ("the City"). Plaintiff Rickey Paul VanDyke, Sr. ("VanDyke") objects to the R&R. [Doc. No. 71].

According to statute, the Court must conduct a de novo review of any portion of the magistrate judge's opinion to which specific objections are made. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); D. Minn. L.R. 72.2(b). Based on that de novo review, and for the reasons set forth below, the Court overrules Plaintiff's Objection and

adopts the R&R.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The magistrate judge's R&R thoroughly documents the factual and procedural background of Plaintiff's case, which is incorporated herein by reference. VanDyke was formerly employed by the City as a Minneapolis Police Officer. Earlier in this lawsuit, brought under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621, et. seq., this Court dismissed Plaintiff's claims of continuing employment discrimination. See VanDyke v. Minneapolis Police Dep't, No. 14-CV-224 (SRN/SER), 2015 WL 138060 (D. Minn. Jan. 7, 2015). Therefore, the City's Motion for Summary Judgment concerned the remaining portions of VanDyke's employment discrimination claim based on his allegedly wrongful termination.

As the magistrate judge observed, only those facts concerning VanDyke's termination are relevant to his wrongful termination claim, as opposed to facts concerning his entire employment history. (R&R at 2, n.2 [Doc. No. 70].) Briefly stated, pursuant to MPD policy, officers are required to be truthful, for which a violation warrants termination (id. at 4), and are also required to inventory property obtained in the line of duty, regardless of whether an arrest has been made. (Id.) If the property in question is a firearm, officers are further required to complete a "trigger tag," noting the officer's badge number, date and time of recovery, firearm serial number, case control number, and any other identifying information. (Id.) In addition, the MPD requires officers to submit a Computer Assisted Police Records System ("CAPRS") report, describing the

circumstances surrounding the recovery of the firearm and identifying any involved parties. (Id.) The inventoried property is maintained by the MPD's Property and Evidence Unit; retaining property or evidence for personal use is prohibited. (Id.) Also pursuant to MPD policy, only the Criminal Investigations Division Commander, or his or her designee, is authorized to release firearms that have been inventoried in the Property and Evidence Unit. (Id.)

The relevant facts surrounding VanDyke's termination involve his response to a 911 call on May 3, 2012. (Id. at 5.) The caller reported the discovery of three abandoned shotguns at Willman Trucking ("Willman") in the city of Minneapolis. (Id.) VanDyke responded to the call, along with his partner, Officer Schram, tested the firearms, and determined that they could not fire. (Id.) While VanDyke intended to inventory the firearms, (id.), a Willman employee expressed interest in keeping them and inquired about whether that was possible. (Id. at 6.) Despite the MPD policy regarding property obtained in the line of duty and the specific policy regarding firearms, VanDyke believed that all three shotguns could be returned to Willman as long as they had not been reported as stolen. (Id.) Using a computer in his squad car, VanDyke determined that two of the shotguns had not been reported stolen, but was unable to determine the status of the third gun. (Id.) VanDyke informed his partner that he would disassemble the third gun at his home in order to find its serial number, and then run a report. (Id.)

VanDyke took all three shotguns home with him, placing them in his garage. (Id. at 7.) In his incident report of the May 3 call, although VanDyke knew the guns were

real, he described them as "replicas found in trash caller will dispose." (Id.)

Later on May 3, 2012, a Willman employee, Lisa Wilson, contacted the MPD to confirm her interest in obtaining the shotguns. (Id. n.6.) The MPD could not respond to Wilson's request because VanDyke had not completed an inventory. (Id.) On June 19, 2012, the MPD emailed VanDyke, informing him that the MPD's Internal Affairs Unit ("IAU") was investigating him for suspected violations of truthfulness and ethics related to the May 3, 2012 incident. (Id.)

On June 20, 2012, VanDyke returned to Willman with the firearms. (Id.) He gave the firearms to an employee, but did not request identification nor did he seek any permission from his supervisors to return the guns to Willman. (Id.) In the 43-day period during which VanDyke possessed the firearms, he did not inventory them, submit a CAPRS report, or create a trigger tag. (Id. at 7-8.)

After conducting an investigation, the IAU found that VanDyke had violated the MPD's truthfulness policy by adding false remarks to a call and conducting a firearms query check differently than he had reported. (Id. at 9.) They also determined that he had violated the ethics policy by failing to inventory the firearms that he instead took home with him. (Id.)

Shortly after the IAU investigation, VanDyke attended a Loudermill Panel Hearing in order to offer mitigating circumstances. (Id.) The Loudermill Panel recommended VanDyke's termination. (Id. at 10.) The MPD Chief of Police Janeé Harteau reviewed the charges, the investigation, and the recommendation of the Loudermill Panel, and

terminated VanDyke on November 30, 2012, when he was age 62. (Id.)

Addressing the City's Motion for Summary Judgment in the R&R, Magistrate Judge Rau examined the record under the McDonnell-Douglas burden-shifting analysis to determine whether genuine issues of material fact precluded summary judgment. (R&R at 18 [Doc. No. 70].) Assuming that VanDyke had established a prima facie case of age discrimination, the magistrate judge determined that the City had articulated a legitimate reason, other than age, to terminate VanDyke. (Id. at 20.) Further, Magistrate Judge Rau examined whether VanDyke had presented sufficient evidence to establish that the City's articulated reason for termination was mere pretext, so as to create a disputed issue of fact. (Id. at 21-33.) After considering VanDyke's arguments and reviewing the record, the magistrate judge concluded that VanDyke failed to present sufficient evidence to create a genuine issue of material fact that the City's termination of VanDyke was pretext for unlawful age discrimination. (Id. at 33-34.) Accordingly, Magistrate Judge Rau recommended that the City's summary judgment motion be granted and the lawsuit be dismissed with prejudice. (Id.)

In VanDyke's Objection, he argues that the magistrate judge erred by: (1) disregarding applicable legal standards; and (2) failing to consider, or misconstruing, certain facts and evidence. (Objection at 1; 7-16 [Doc. No. 71].)

## II. DISCUSSION

As to the applicable legal standards, VanDyke argues that the magistrate judge did not consider whether VanDyke's actions regarding the May 3, 2012 event were culpable,

5

i.e., whether they were done knowingly and willfully, citing the Model Penal Code § 2.02(2), as to the requirements for culpability, and 18 U.S.C. § 1001, as to the requirements for a "false statement." VanDyke misunderstands the "legal standards" that govern his claim on summary judgment.

First, as the magistrate judge observed, summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The Court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. Enter. Bank v. Magna Bank of Missouri, 92 F.3d 743, 747 (8th Cir. 1996). The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Enter. Bank, 92 F.3d at 747. A party opposing a properly supported motion for summary judgment may not rest on mere allegations or denials, but must set forth specific facts in the record showing that there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).

Within the summary judgment scope of review, Magistrate Judge Rau then correctly examined whether the City had established that there were no disputed issues of material fact with respect to VanDyke's age discrimination claim under the ADEA, such that it failed as a matter of law. (R&R at 15 [Doc. No. 70].) The magistrate judge evaluated the record to determine if any direct evidence of discrimination supported VanDyke's claim of discrimination with respect to his November 30, 2012 firing, finding

none.[1]  (Id. at 17.)

Absent a showing of direct evidence of discrimination, courts apply the burden-shifting test set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), to analyze Plaintiff's age discrimination claim based on indirect evidence.  Tusing v. Des Moines Indep. Cmty. Sch. Dist., 639 F.3d 507, 515 n.3 (8th Cir. 2011) (noting that the McDonnell Douglas test has been applied to claims under the ADEA and is an appropriate way to analyze ADEA pretext claims).  Under the McDonnell Douglas framework, the plaintiff initially must establish a prima face case of discrimination.  Hilde v. City of Eveleth, 777 F.3d 998, 1004 (8th Cir. 2015) (citing McDonnell Douglas, 411 U.S. at 802).  The burden of production then shifts to the defendant employer to articulate a legitimate, nondiscriminatory reason for its actions.  Id.  If the defendant offers a legitimate, nondiscriminatory reason, the burden shifts back to the plaintiff to put forth evidence showing the defendant's proffered explanation is a pretext for unlawful discrimination.  Id.  A plaintiff may establish sufficient evidence of pretext by showing that the employer's explanation is either "unworthy of credence" because it lacks any factual basis, or by persuading the court that an unlawful reason "more likely motivated the employer."  Id. (quoting Torgerson v. City of Rochester, 643 F.3d 1031, 1047 (8th

---

[1] While VanDyke identified age-related statements made by supervisors in 2009 and 2010 as direct evidence, Magistrate Judge Rau found that VanDyke failed to submit facts showing that any of the supervisors in question played a role in the termination decision in November 2012.  (R&R at 17-18.)  Rather, the comments were merely stray remarks, which do not constitute direct evidence of discrimination.  (Id.) (citations omitted).  In any event, Van Dyke does not challenge the magistrate judge's determination that he presented no direct evidence of age discrimination.

7

Cir. 2011)).

The magistrate judge applied this analysis. He first assumed, for purposes of the motion, that Plaintiff had satisfied the elements of a prima facie case. (R&R at 19) (citing Noreen v. Pharmerica Corp., 118 F. Supp.3d 1130, 1137 (D. Minn. 2015)). The magistrate judge then considered whether the City had articulated a legitimate, nondiscriminatory reason for VanDyke's termination. (Id.) Based on the evidence in the record–which included evidence and interviews from the IAU investigation, VanDyke's deposition, and the Incident Detail Report–the magistrate judge properly found that the City offered a legitimate, non-discriminatory reason for VanDyke's termination: he violated the MPD's policy manual with respect to truthfulness and ethics. (Id. at 20.) Specifically, the magistrate judge found that "[t]he City terminated VanDyke because he **lied** in the Incident Detail Report and did not run a query, **stored** the Firearms in his personal residence for forty-three days without ever completing an inventory, CAPRS report, or trigger tag, and **returned** the Firearms to an employee at Willman–all in violation of the Manual." (Id.) (citations omitted) (emphasis in original).

As noted, in his Objection, VanDyke argues that the magistrate judge failed to consider whether VanDyke's actions were done knowingly and willfully, citing the Model Penal Code § 2.02(2) and 18 U.S.C. § 1001. (Obj. at 9 [Doc. No. 71].) He also contends that the magistrate judge failed "to apply the legal standards that directed the Plaintiff and [his partner] on May 3, 2012," apparently quoting from the MPD's policy manual regarding the use of discretion. (Id. at 11.) In addition, he argues that because the

shotguns had not been surrendered to him, "there was no legal reason to seize the shotgun." (Id. at 12.) He further finds error in the magistrate judge's analysis for failing "to focus exclusively on the policies the Plaintiff allegedly violated." (Id. at 13.)

Under the McDonnell Douglas analysis, however, the Court is concerned solely with whether the employer's proffered reason for termination was the true reason for termination. Whether VanDyke knowingly violated a policy or whether he exercised appropriate discretion pursuant to MPD policy is not relevant to this analysis. Rather, the Court considers whether the City's reason for terminating VanDyke was a legitimate, non-discriminatory reason. As the magistrate judge observed, it is not the Court's "province to decide whether that reason was wise, fair, or even correct, ultimately, so long as it truly was the reason for the plaintiff's termination." (R&R at 19 [Doc. No. 70]) (citing Wilking v. Cnty. of Ramsey, 153 F.3d 869, 873 (8th Cir. 1998)). A policy violation is a legitimate, non-discriminatory reason, as the magistrate judge found. (Id. at 20) (citing Dougherty v. Chisago Cnty., No. 11-CV-2404 (PJS/TNL), 2013 WL 3974164, at *8-9 (D. Minn. July 31, 2013)). Because the City offered evidence establishing that it terminated VanDyke for policy violations, the magistrate judge properly found that the City met its burden under the McDonnell Douglas analysis.

Having found the proffered reason to be legitimate and non-discriminatory, under McDonnell Douglas, the burden shifted back to Plaintiff to put forth evidence showing that the City's proffered explanation is a pretext for unlawful discrimination. Hilde, 777 F.3d at 1004. Again, pretext evidence is of a type that shows that an employer's

9

explanation lacks any factual basis or persuades the court that an unlawful reason "more likely motivated the employer." Id. As noted in the R&R, VanDyke's evidence of pretext was based on the following: (1) MPD's failed investigation; (2) availability of MPD's early retirement plans; (3) MPD's failure to provide adequate training; (4) progressive discipline; and (5) stray comments. (R&R at 21 [Doc. No. 70]) (citing Pl.'s Mem. in Resp. at 70.) The magistrate judge painstakingly examined VanDyke's purported evidence of pretext and determined it was based on conjecture, lacking in tangible evidence to create a disputed fact issue, or too remote in time to establish a nexus to VanDyke's termination. (Id. at 21- 34.) This Court agrees.

In his Objection, Van Dyke raises two points regarding the magistrate judge's finding of no disputed fact issues as to pretext. First, VanDyke argues that, over time, the City added policy violations to the list of violations that purportedly supported his termination, specifically, not filling out an incident report or a trigger tag. (Obj. at 14 [Doc. No. 71].) Assuming that the City found additional violations, however, does not create a fact issue as to pretext. VanDyke does not dispute that he failed to complete an incident report or trigger tag. Rather, he argues that by "tacking on" additional facts, the City insinuated that VanDyke intended to add the shotguns to his own personal collection. The Court finds that any such additional facts or policy violations do not diminish the credence of the City's proffered explanation for VanDyke's termination nor do they persuade the Court that an unlawful reason likely motivated the City.

Second, VanDyke argues that he submitted evidence of pretext by showing that his

partner, Officer Schram, was not terminated for his actions on May 3, 2012.  (Id.)  Granted, an employee's pretext argument may be based on comparisons to other employees, but the plaintiff asserting such an argument must demonstrate that the employees are "similarly situated in all relevant aspects."  See Harvey v. Anheuser-Busch, Inc., 38 F.3d 968, 972 (8th Cir. 1994) (citation omitted).  VanDyke argues that Officer Schram was involved in the same aspects of responding to the call as Plaintiff, yet received more lenient discipline, and was not terminated.  However, as the magistrate judge found, VanDyke submitted "no evidence suggesting he had the authority to hold the Firearms in his personal residence or that he was authorized by the Commander to release the Firearms into the custody of a Willman employee."  (R&R at 24 [Doc. No. 70].)  Among other things, the IAU investigation found that VanDyke did not properly inventory the shotguns and gave them to a civilian without conducting a background check.  (Id. at 9) (citing IAU Investigation Report at 14-16.)  Because there is no evidence in the record that Officer Schram participated in any of these actions, the fact that Schram received more lenient treatment is not evidence of pretext.  The Court therefore agrees with the magistrate judge's finding that VanDyke failed to present sufficient evidence to create a genuine issue of material fact that the City's articulated reason for his termination was pretextual.

For all of the foregoing reasons, the Court affirms the findings of Magistrate Judge Rau and adopts his recommendations.

**THEREFORE, IT IS HEREBY ORDERED** that:

1. Plaintiff's Objection [Doc. No. 71] is **OVERRULED**;

2. Defendant's Motion for Summary Judgment [Doc. No. 48] is **GRANTED**;

3. The Report and Recommendation [Doc. No. 70] is **ADOPTED**; and

4. This action is **DISMISSED WITH PREJUDICE.**

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated:  June 16, 2016                             s/Susan Richard Nelson
                                                  SUSAN RICHARD NELSON
                                                  United States District Judge